IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONALD JOE NAVARRE,

    Plaintiff,

    v.                                                                       Case No. 08-1341-JTM

THE BOEING COMPANY,

    Defendant.

MEMORANDUM AND ORDER

This matter is before the court on defendant Boeing Company's ("Boeing") motion for summary judgment. (Dkt. No. 34). The plaintiff, Donald Navarre, filed this action against Boeing, his former employer, on October 31, 2008 . (Dkt. No. 1). Navarre alleged Boeing violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 601 *et seq.*, when it: 1) terminated his employment because he had a disability; 2) terminated his employment in retaliation for his requests for reasonable accommodation; and 3) terminated his employment because of his age.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884,

885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Boeing hired Navarre on November 9, 1989. Boeing's Reasonable Accommodation Review Board ("the Board") medically laid off Navarre, who was a security officer, on November 1, 2007, because he could not perform the essential function of apprehending or handcuffing physically resistant individuals. Navarre never made any complaints of disability discrimination during his employment at Boeing.

Navarre underwent neck surgery in 1998. On January 22, 2007, Navarre slipped in Boeing's parking lot, and fractured his ankle. Dr. Wilkinson examined Navarre regarding his injury,

and was involved in his case from January 22, 2007, until Navarre's medical layoff. Navarre was also referred to Dr. Stein, a neurosurgeon not affiliated with Boeing, who performed Navarre's neck surgery in 1998. From January 2007 until his employment was terminated, Navarre was placed on intermittent medical restrictions for his ankle, knee, and neck. Navarre was scheduled to return to work at Boeing on September 11, 2007. On September 11, 2007, Dr. Stein allowed Navarre to return to work with restrictions. On October 11, 2007, Dr. Stein allowed Navarre to return to work without restrictions. Boeing accommodated Navarre's medical restrictions from July 2007 through October 2007.

Halie Guinn, an advanced nurse practitioner, spoke to Dr. Wilkinson, after she found out that Navarre was released for full duty, without restriction, two-and-a-half months after his neck fusion, which took place on July 30, 2007. Based on Guinn's prior experience, neurosurgeons typically wait at least six months after this type of surgery to release patients to return to work. Dr. Wilkinson shared the same concerns as Guinn. Dr. Wilkinson then continued Navarre's previous restrictions until his next scheduled appointment with him on October 24, 2007.

Dr. Wilkinson sent a letter to Dr. Stein, enclosing Navarre's job analysis, and asked for reconsideration regarding Navarre's work status. Dr. Stein responded that "[Navarre] avoid physical altercation because of the risk involved." (Dkt. No. 33 at ¶4(a)(14)). Dr. Wilkinson interpreted Dr. Stein's letter as issuing a permanent restriction that Navarre avoid any physical altercation as part of his work activities. Dr. Wilkinson's notes from his October 24, 2007 appointment with Navarre, indicate he discussed Dr. Stein's letter with Navarre, and based on Dr. Stein's restrictions Navarre is to avoid any altercation/physical activities, and the restrictions are permanent. Navarre admitted he had no reason to question Dr. Wilkinson's motives or believe Dr. Wilkinson was trying to force

3

him out of a job. (Dkt. No.43 at 30; Dkt. No. 35 at Statement of Facts ("SOF") 36; Dkt. No. 38 at 1-2).

Guinn informed Boeing management based on Dr. Stein's report, and Dr. Wilkinson's notes, that Navarre had the following permanent restriction: avoid any physical altercation as part of work activities. The Board policy states the review process is triggered when a current employee or applicant has a medical condition and/or receives permanent medical restrictions preventing them from performing essential functions of their current assignment or potential job assignment. When an employee receives permanent restrictions, the Board reviews a job analysis, obtains management's and the employee's input, as part of the interactive process, and determines whether the employee can perform the essential functions of the position. A vocational rehabilitation counselor also looks at other positions for alternative placement for the employee.

Boeing security officers carry guns, and the company's use of force policy contemplates the use of lethal force. Navarre's job duties include protecting people from threats and immediate physical harm, including the obligation to inject himself into a situation to stop violence or the theft or destruction of property. Navarre agreed that the security officer's response can involve strenuous physical activity. The job analysis for the security officer position includes the following two essential job functions: must be able to apprehend and handcuff physically resistant individuals.

The Board looked at whether Navarre could perform the essential functions of a security officer position, given his permanent medical restrictions. Even if Navarre were paired up with another officer, there is no way to ensure that Navarre could avoid becoming engaged in a physical altercation as a security guard. (Dkt. No. 43-1, Exh. Q, Kondziola Deposition. 65:20 - 66:20; 67:1 - 68:2). The Board could not determine any potential accommodations that would allow Navarre to

apprehend and handcuff physically resistant individuals because there is the possibility that a security officer could be involved in a physical altercation. The Board considered alternative placements for Navarre outside the security department. Navarre was qualified for several positions, but none were open or available. Navarre did not know of any open positions at Boeing that he was qualified for at the time of his medical layoff. Navarre did not suggest any accommodations that Boeing might be able to provide to allow him to do his job. (Dkt. No. 43 at 7; Dkt. No. 35-1, Exh. A, Navarre Deposition 166:20 - 167:4).

Navarre now claims that his only disability is a sleeping impairment. (Dkt. No. 38 at 4). Navarre never informed Boeing that he had a sleeping impairment or requested any accommodation related to a sleeping impairment. (Dkt. No. 43 at 9; Dkt. No. 43-2, Exh. Z; Dkt. No. 43-3, Exh. AA; Dkt. No. 43-4, Exh. BB; Dkt. No. 43-5 Exh. CC).

Navarre originally asserted a claim that Boeing terminated his employment because of his age. (Dkt. No. 1). "Plaintiff Navarre withdraws his claim of age discrimination." (Dkt. No. 38 at 14, n. 1). Based on Navarre's failure to come forward with specific facts showing the presence of a genuine issue of material fact for trial, and significant probative evidence supporting the age discrimination allegation, the court finds Boeing is entitled to summary judgment on the age discrimination claim brought in Count III. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"Discrimination" as used in the ADA includes three distinct types. First, it means treating "a qualified individual with a disability" differently because of the disability, that is, disparate treatment. Additionally, because the ADA defines discrimination in part as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual

5

. . . ." 42 U.S.C. § 12112(b)(5)(A), a separate claim of discrimination can be stated under the ADA for failing to provide a reasonable accommodation. Finally, under a disparate impact theory, discrimination is defined as including the use of "qualification standards . . . or other selection criteria that screen out or tend to screen out an individual with a disability. . . ." 42 U.S.C. § 12112(b)(6). Whatever type of discrimination is alleged, a plaintiff first must establish that he was a qualified individual with a disability.

The ADA prohibits employers from discriminating against a qualified individual with a disability because of the disability of such an individual. 42 U.S.C. § 12112(a). A "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA further defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities . . . ." 42 U.S.C. § 12102(1)(A). "Major life activities" include functions such "as caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(I). A major life activity is substantially limited when an impaired person is:

>    (I) Unable to perform a major life activity that the average person in the general population can perform; or
>
>    (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j).

Absent direct evidence of discrimination, a claim brought pursuant to the ADA is subject to the same burden-shifting approach borrowed from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Davidson v. America Online, Inc.,* 337 F.3d 1179, 1189 (10th Cir.2003); *Butler v. City of Prairie Village, Kan.,* 172 F.3d 736, 747 (10th Cir.1999). Under which, the plaintiff carries the initial burden to establish a prima facie case by a preponderance of the evidence. *See McDonnell Douglas,* 411 U.S. at 802. If a plaintiff fails to prove any element of the prima facie case, summary judgment is proper. *Burnett v. Pizza Hut of America, Inc.,* 92 F.Supp.2d 1142, 1153 (D.Kan. 2000). If a plaintiff can prove a prima facie case of discrimination, defendant must produce evidence of a legitimate, nondiscriminatory reason for the challenged employment decision. *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1321 (10th Cir.1997). If defendant satisfies this burden, plaintiff must introduce evidence "the employer's proffered reason for the challenged [employment] action was pretextual–i.e., unworthy of belief." *Id.* (citing *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995)).

To establish a prima facie ADA discrimination case, the plaintiff must demonstrate that: (1) he is disabled within the meaning of the ADA; (2) he is a "qualified individual" meaning that he is "able to perform the essential functions of the job, with or without reasonable accommodation;" and (3) the employer terminated or took adverse employment action against the plaintiff because of his disability. *See MacKenzie v. City & County of Denver,* 414 F.3d 1266, 1274 (10th Cir.2005).

As noted above, under the ADA, "disability" means "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(2)(A). Courts use a three-step process to determine whether an individual is disabled under the "actual disability" prong: (1) does the plaintiff suffer from a physical or mental impairment; (2) what life activity does the

impairment affect, and is it a major life activity under the ADA; (3) does the impairment substantially limit the major life activity. *See Bragdon v. Abbott,* 524 U.S. 624, 631 (1998); *Poindexter v. Atchison, Topeka & Sante Fe Railway Co.,* 168 F.3d 1228, 1230 (10th Cir.1999).

In deciding the latter question the court considers: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent long term impact, or expected permanent or long term impact of or resulting from the impairment." *Pack v. Kmart Corp.,* 166 F.3d 1300, 1305 (10th Cir.1999) (citations omitted), *cert. denied,* 528 U.S. 811 (1999).

The Tenth Circuit has held that a plaintiff must establish he "was unable to sleep or was significantly restricted as to the condition, manner, or duration of [his] ability to sleep as compared to the average person in the general population, taking into consideration the three factors and any mitigating or corrective measures." *Pack v. Kmart Corp.*, 166 F.3d 1300, 1306 (10th Cir. 1999), *cert. denied,* 528 U.S. 811 (1999). Taking medication and stating that "I usually get a tough night's sleep" is not enough to meet the "substantial" requirement, as "[d]ifficulty sleeping is extremely widespread." *Colwell v. Suffolk County Police Dept.,* 158 F.3d 635, 644 (2nd Cir.1998), *cert. denied,* 526 U.S. 1018 (1999). Instead, there must have been a showing that the plaintiff's affliction is worse than that "suffered by a large portion of the nation's adult population." *Id.; see also, Pack,* 166 F.3d at 1306.

The first element of a prima facie case of discrimination is that a plaintiff is disabled. In this case, Navarre claims he has an "impaired ability to sleep effectively." (Dkt. No. 38 at 4). Specifically, he alleges he "is unable to achieve a reasonable night of rest when he goes to bed each night. On a good night, he may achieve 5 hours of sleep . . . ." (*Id.*). Boeing contends that: 1) there

is no medical evidence to support Navarre's allegation of sleeping problems; 2) Navarre never informed Boeing of this sleeping disability; and 3) Navarre never requested accommodation for this sleeping disability. (Dkt. No. 43 at 16).

The record does not support Navarre's claim that he was substantially limited by his sleeping problems. There are no medical records or any other evidence that indicates Navarre suffers from sleeplessness, or that it is a chronic and persistent problem. There is no evidence that Navarre was substantially limited in any major life activity at the time of his termination. Navarre has not demonstrated an impairment to a major life activity, and thus has failed to establish the first prong of his prima facie case, that he is a disabled person under the ADA. As such, summary judgment in favor of the defendant is proper on Navarre's ADA claim.

The second element requires a determination of whether Navarre is qualified to perform the essential functions of the job, with or without reasonable accommodation. *Jones v. U.P.S, Inc.,* 502 F.3d 1176,1189 (10th Cir.2007). The evidence before the court establishes that Navarre is not qualified to perform the essential functions of the job of security officer. The record contains Dr. Stein's work restrictions that Navarre is to avoid physical altercation because of the risk involved. The court does not find it unreasonable that Boeing requires a security officer be able to engage in a physical altercation, if necessary.

Finally, the third element requires the plaintiff to offer some affirmative evidence that the disability was a determining factor in the employer's decision. "This burden is not onerous, but it is also not empty or perfunctory." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323-24 (10th Cir.1997) (citations omitted). "[I]f the trier of fact finds [the evidence] credible, and the employer remains silent, she would be entitled to judgment as a matter of law." *Id.* at 1324.

Boeing contends Navarre cannot make out a prima facie case because: 1) he is not disabled; 2) he was not terminated because of his alleged disability; and 3) he did not inform them of his alleged sleeping disability; and 4) he never requested accommodation for his alleged sleeping disability. Even if the court assumed Navarre suffers from a disability within the meaning of the ADA, there is no evidence that Boeing knew of Navarre's alleged sleeping disability. That being so, summary judgment is appropriate on plaintiff's ADA claim because there is no evidence that his alleged sleeping disability caused his dismissal. Boeing maintains that Navarre was fired because of his inability to perform the essential functions of the job of security officer, which is a nondiscriminatory, legitimate reason.

Boeing is entitled to summary judgment because Navarre cannot establish a prima facie case. Navarre did not provide affirmative evidence that his claimed disability played a role in the termination of his employment, and thus the third element of his prima facie case also fails. Boeing provides a well-documented record that it terminated Navarre based on doctor's orders permanently restricting Navarre from performing essential functions of his assignment as a security officer. Boeing advanced legitimate, nondiscriminatory reasons for terminating Navarre, and he has not shown those reasons to be a pretext for discrimination. As such, summary judgment in favor of the defendant is proper on Navarre's ADA claim.

There is no evidence that Navarre: 1) is "disabled" as defined in the ADA; 2) is able to perform the essential functions of the security officer job; 3) is substantially limited in a major life activity; 4) informed Boeing about his alleged sleeping disability; 5) requested accommodation regarding his alleged sleeping disability; 6) was terminated by Boeing because of his disability; and 7) was terminated by Boeing because he requested reasonable accommodation for his disability.

Navarre failed to meet all three elements necessary to establish a prima facie case of disability discrimination.

IT IS ACCORDINGLY ORDERED THIS 16th day of March, 2010, that the defendant's motion for summary judgment (Dkt. No. 34) is granted in its entirety.

s/J. Thomas Marten  
J. THOMAS MARTEN, JUDGE